IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AARON EDWARDS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-2239-BN |
| | § | |
| FIRST TRUST PORTFOLIOS L.P., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Defendant First Trust Portfolios L.P. ("First Trust") has filed a motion for summary judgment. *See* Dkt. No. 56.

Plaintiff Aaron Edwards filed a response, *see* Dkt. No. 69, and First Trust filed a reply, *see* Dkt. No. 72.

For the reasons explained below, the Court grants in part and denies in part First Trust's Motion for Summary Judgment [Dkt. No. 56].

### Background

Plaintiff Aaron Edwards filed this lawsuit against his former employer, Defendant First Trust, alleging that he was terminated in retaliation for engaging in purported whistleblowing activities.

He asserts claims under the anti-retaliation and whistleblower protection provisions provide under the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A; the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), 15 U.S.C. § 78u-6; and the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §

5567. *See* Dkt. No. 1.

First Trust is a registered securities broker-dealer specializing in the underwriting, trading, and distribution of various investment products. Edwards began working for First Trust in 2019 as a wholesaler, and he reported to Steve Ritter. *See id.*

Mr. Ritter, who served as Edwards's direct supervisor, ultimately made the decision to terminate Edwards. *See* Dkt. No. 58 at 33.

In October and November 2021, First Trust cited Edwards for compliance violations. *See id.* at 127-128. Edwards executed written warnings acknowledging these violations and a statement of corrective action. *See id.*

On March 8, 2022, Mr. Ritter sent an email to Edwards summarizing a discussion they had regarding work performance issues. *See id.* at 136-140. The email stated:

> If your percent of firm and rank continue to decline I am going to go a different route with someone else. I don't want to do this but you have to deliver. Take this very seriously. Also during our discussion we went over Compliance very thoroughly and since you have had several compliance issues if anything else arises you will be let go. I don't want you to leave but we can't have people continue to make mistakes and put the firm at risk.

*Id.* at 136.

On May 3, 2022, First Trust cited Edwards for a third compliance violation, which involved purchasing an approximately $62 gift for one of his financial advisor clients to commemorate their child's athletics accomplishment. *See id.* at 131.

On May 5, 2022, Mr. Ritter sent an email to Andy Roggensack, First Trust's

President, stating that Edwards was a "compliance issue" and that he would "like to get rid of [him]." Dkt. No. 58 at 156.

Edwards's most recent violation implicated First Trust's Gift Policy, which stated that "[t]he First Trust Gift Rule on [financial] advisor[s] is $100 per year, however it is the firm's policy to not give gifts because the First Trust year-end gift is usually right below the $100 threshold." *Id.* at 133.

Edwards alleges that, "[t]o get clarity on First Trust's Gift Policy, [he] spoke with colleagues" and "learned that First Trust had a gift program in which First Trust only gives gifts to financial advisors at the end of the year who sold the most First Trust products during that year." Dkt. No. 71 at 5. And Edwards contends that this practice (the "Year-End Gift Policy") constituted an illegal sales contest under Securities and Exchange Commission ("SEC") and Financial Industry Regulatory Authority ("FINRA") regulations. See *id.* at 5-6.

On May 13, 2022, Edwards sent an email to Erik Jackson, First Trust's Compliance Officer, expressing his concern that First Trust's Year-End Gift Policy could be "(mis)construed" as an impermissible sales contest. Dkt. No. 58 at 340.

On May 19, 2022, Edwards and Mr. Jackson participated in a telephone call to discuss Edwards's email, in which Mr. Jackson explained that First Trust's Year-End Gift Policy did not run afoul of applicable regulations. *See id.* at 29.

On the afternoon of May 20, 2022, Mr. Ritter sent an email to Edwards, which copied Mr. Jackson and Patricia Costello, head of First Trust's human resources department. The email stated:

> Aaron,
> You still haven't signed the write up form.
> We need to have a conversation Monday at the latest with all parties in this email.
> 10:30 Central time.
> Thank you.

Dkt. No. 71 at 23.

Later that same day, Edwards reported his concerns regarding First Trust's Year-End Gift Policy to FINRA and the SEC via online submission forms. *See* Dkt. No. 58 at 354-366.

On the morning of May 22, 2022, Ms. Costello sent Mr. Ritter an email with "Call" in the subject line, which purported to reference the conversation requested by Mr. Ritter in his earlier email to Edwards. *See id.* at 367. In the email, Ms. Costello identified areas to be covered during the call including "Compliance issues and why he has not signed the Written Warning" and "Performance Issues – sales numbers an issue." *Id.* Ms. Costello also advised Mr. Ritter to be "legally prepared to present the material in the call to protect the company." *Id.*

Later that same day, Edwards responded to Mr. Ritter's May 20, 2022 email with the same individuals copied. *See* Dkt. No. 71 at 22-23. In the email, Edwards shared his concerns that First Trust's Year-End Gift Policy constituted an illegal sales contest and noted that he mentioned these concerns to Mr. Jackson in a prior email. *See id.*

On May 23, 2022, First Trust formally terminated Edwards's employment via a telephonic meeting that included Mr. Ritter, Mr. Jackson, Ms. Costello, and Mr. Roggensack. *See* Dkt. No. 58 at 110.

After his termination, Edwards filed a wrongful termination complaint based on whistleblowing activity under SOX and the CFPA with the U.S. Department of Labor ("DOL"). *See id.* at 4-12.

The Occupational Safety and Health Administration ("OSHA"), the federal agency assigned to investigate retaliation claims by the DOL, investigated Edwards's claims. *See id.* at 13-24.

But, prior to OSHA issuing its findings, Edwards filed his complaint in this Court under SOX's "kick out" provision. *See* Dkt. No. 71 at 33-34.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must

support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve

all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)).

"[W]hen the moving party has carried its burden under [Federal Rule of Civil Procedure] 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and

internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*,

353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

## Objections to Summary Judgment Evidence

Edwards objects to First Trust's reliance on documents concerning the OSHA investigation into Edwards's claims. Specifically, Edwards objects to: (1) the October 11, 2023, Report of Investigation authored by Regional Investigator Abby Cannon [Dkt. No. 58 at 13-24]; (2) the September 5, 2023, memorandum of notes regarding a phone call between Ms. Cannon and Edwards's counsel [Dkt. No. 58 at 25-26]; and (3) the October 3, 2023, email from Ms. Cannon to Edwards's counsel [Dkt. No. 58 at 27]. *See* Dkt. No. 70 at 10.

Edwards points to *Stone v. Instrumentation Lab'y Co.*, 591 F.3d 239 (4th Cir. 2009), which is cited in the DOL's response to a subpoena for documents, *see* Dkt. No. 71 at 31-36, and contends that the Court cannot consider the OSHA investigation documents because OSHA did not reach a "final decision" or issue findings regarding the merits of Edwards's case and the "kick out" statute, *see* 18 U.S.C. § 1514A(b)(1)(B), provides for the district court to hear the claim de novo. *See* Dkt. No. 71 at 10-11; *see also Stone*, 591 F.3d at 250 ("Congress unquestionably has the right to create a complainant-friendly statutory scheme that affords no deference to non-final agency findings.").

The "kick out" provision of Section 1514A "allows a plaintiff to bring an action 'for de novo review in the appropriate district court.'" *Wallace v. Tesoro Corp.*, 796

F.3d 468 (5th Cir. 2015) (citing 18 U.S.C. § 1514A(b)(1)(B)).

In response, First Trust agrees that Edwards is entitled to "de novo review" but asserts that the Court may still consider the OSHA investigation materials, specifically, the October 11, 2023 Report of Investigation authored by Regional Investigator Abby Cannon [Dkt. No. 58 at 13-24].

The Court is persuaded by *Wallace v. Tesoro Corp.*, 796 F.3d 468 (5th Cir. 2015), which states that "[t]he guarantee of de novo review prevents deference to OSHA's findings and conclusions if the employee subsequently sues, but it is not a complete redaction of the administrative proceeding. There is no reason to think that, in enacting SOX, Congress varied from the ordinary meaning of 'de novo review.'" *Id.* at 475.

And, so, the Court finds that Edwards has not provided a sufficient basis for why the October 11, 2023 Report of Investigation authored by Regional Investigator Abby Cannon [Dkt. No. 58 at 13-24] should be disregarded. And the objection, as to this document, is overruled.

And, because Edwards has not provided an independent basis for why the September 5, 2023 memorandum of notes regarding a phone call between Ms. Cannon and Edwards's counsel [Dkt. No. 58 at 25-26] and the October 3, 2023 email from Ms. Cannon to Edwards's counsel [Dkt. No. 58 at 27] should be disregarded, the Court overrules Edwards's objection as to these documents, too.

## Analysis

### I.    <u>Edwards's SOX Claim</u>

Edwards asserts a claim against First Trust for violation of the anti-retaliation and whistleblower protection provisions provided under SOX, 18 U.S.C. § 1514A.

A SOX retaliation claim requires an employee to prove "by a preponderance of the evidence, that (1) he engaged in protected whistleblowing activity, (2) the employer knew that he engaged in the protected activity, (3) he suffered an 'adverse action,' and (4) the protected activity was a 'contributing factor' in the 'adverse action.'" *Wallace v. Andeavor Corp.*, 916 F.3d 423, 426 (5th Cir. 2019) (quoting *Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 259 (5th Cir. 2014); cleaned up).

First Trust does not dispute that Edwards suffered an adverse employment action when he was terminated. And, so, the Court's analysis turns on the first, second, and fourth elements of Edwards's SOX claim.

### A.   <u>Protected Whistleblowing Activity</u>

SOX prohibits a publicly traded company from retaliating against an employee who reports information to a supervisor "regarding any conduct which the employee reasonably believes constitutes a violation" of one of the six enumerated categories, which includes mail fraud, wire fraud, bank fraud, securities fraud, violation on an SEC rule or regulation, or violation of a federal law relating to fraud against shareholders. 18 U.S.C. § 1514A(a)(1); *Allen v. Admin. Rev. Bd.*, 514 F.3d 468, 477 (5th Cir. 2008).

The Fifth Circuit scrutinizes an employee's reasonable belief under "both a subjective and objective standard." *Allen*, 514 F.3d at 477; *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ("An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings.").

First Trust contends that Edwards did not engage in a protected whistleblowing activity because he lacked a reasonable belief that First Trust's Year-End Gift Policy constituted an illegal sales contest. *See* Dkt. No. 57 at 27. And it challenges Edwards's "reasonable belief" under both the subjective and objective standards.

i.    <u>Subjective Reasonableness</u>

First Trust challenges whether Edwards subjectively believed that its Year-End Gift Policy violated one of the enumerated categories of protected activity, specifically, an SEC rule or regulation.

It states that Edwards's "own language in which he questions the Gift Policy is an admission that he did not genuinely believe or assert that the Gift Policy could be a sales contest." *Id* at 28. First Trust refers to the language in Edwards's email to Mr. Jackson, which asked whether the Year-End Gift Policy could be "(mis)construed as a sales contest – which I know we don't do and are very sensitive to?" Dkt. No. 58 at 340.

Edwards responds by stating that he "attempted to soften the language of the email to make it less accusatory, because [he] feared retaliation." Dkt. No. 70 at 13.

And Edwards points to his subsequent whistleblower reports to the SEC and FINRA on May 20, 2022, *see* Dkt. No. *See* Dkt. No. 58 at 354-366, and his email to Mr. Ritter, Mr. Jackson, and Ms. Costello on the day prior to his termination, *see id.* at 367, as evidence of his subjective belief that First Trust's Year-End Gift Policy was an illegal sales contest.

And, so, viewing the allegations and summary judgment evidence most favorably to Edwards, the Court cannot find as a matter of law that Edwards did not possess a subjective belief.

   ii. <u>Objective Reasonableness</u>

First Trust challenges whether Edwards held an objectively reasonable belief that First Trust's Year-End Gift Policy violated an SEC rule of regulation.

At the outset, First Trust contends that Edwards fails to allege that its Year-End Gift Policy violated any specific SEC law or regulation. *See* Dkt. No. 57 at 27.

Specifically, First Trust asserts that the only SEC rule or regulation Edwards implicates is Regulation Best Interest ("Reg BI"), which is not applicable to First Trust. *See id.* According to First Trust, Reg BI only applies to broker-dealers who make recommendations to retail customers, and First Trust is a wholesaler that does not engage in such activity. *See* Dkt. No. 58 at 27; Dkt. No. 72 at 16. And First Trust argues that Edwards's reliance on FINRA Rule 2341, which prohibits non-cash compensation like gifts from exceeding a fixed amount ($100), is misguided because it is not an SEC rule or regulation. *See* Dkt. No. 72 at 17.

In response, Edwards asserts that gifts provided under FINRA Rule 2341 are

only "legal" if they comply with Reg BI.

FINRA Rule 2341 states that "the following non-cash compensation arrangements [including Gifts that do not exceed an annual amount per person fixed periodically by FINRA and are not preconditioned on achievement of a sales target] are permitted provided that they are consistent with the applicable requirements of [Securities Exchange Act] Rule 15l-1 ('Regulation Best Interest')."

The Court is persuaded by Edwards's argument that compliance with FINRA Rule 2341, which First Trust admits applies to it as an investment product sponsor, *see* Dkt. No. 71 at 97, necessarily requires compliance with Reg BI.

And, so long as Edwards's belief that that First Trust's Year-End Gift Policy potentially violated an SEC rule or regulation was reasonable, he satisfies his burden – even if it later turned out to be erroneous. *See Allen*, 514 F.3d at 477 ("[A]n employee's reasonable but mistaken belief that an employer engaged in conduct that constitutes a violation of one of the six enumerated categories is protected.").

The Court turns to whether Edwards's belief was objectively reasonable.

"The objective reasonableness of a belief is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee." *Id.*

The "objective reasonableness" standard applicable to SOX whistleblower claims is similar to the "objective reasonableness" standard applicable to Title VII retaliation claims. *Id.* (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007)). "In Title VII retaliation cases, the objective reasonableness of an

employee's belief can be decided as a matter of law in some cases." *Id.* (citing *Byers v. Dallas Morning News, Inc.,* 209 F.3d 419, 427-28 (5th Cir. 2000)).

But "the objective reasonableness of an employee's belief cannot be decided as a matter of law if there is a genuine issue of material fact." *Id.* (citing *Long v. Eastfield Coll.,* 88 F.3d 300, 305 (5th Cir. 1996)). "If '[r]easonable minds could disagree on this issue,' the objective reasonableness of an employee's belief should not be decided as a matter of law, and the fact-finder's resolution of the issue is entitled to deference on appeal." *Id.* at 477-478 (citing *Lipphardt v. Durango Steakhouse of Brandon, Inc.,* 267 F.3d 1183, 1188 (11th Cir. 2001)).

Edwards worked as an outside wholesaler for First Trust from 2019 to 2022, and, prior to First Trust, he worked in the financial services industry for 20 years, specifically as a wholesaler in the asset management distribution business. *See* Dkt. No. 71 at 3. He states that his belief that First Trust's Year-End Gift Policy constituted an illegal sales contest was based on his years of experience in the financial services industry, general knowledge of SEC and FINRA regulations, and training that he received at First Trust and other employers. *See id.* at 5-6.

First Trust contends that, "[b]ased on numerous declarations of [Edwards's] coworkers with similar experience and education ... it is not reasonable for [Edwards] to believe the Gift Policy was an 'illegal sales contest' based upon his own experience and education." Dkt. No. 57 at 31.

This includes declarations from three First Trust employees – Jeffrey Teare, Sterling Witt, and Morgan Palmer – who worked as outside wholesalers and who all

stated that they knew and understood that First Trust's Year-End Gift Policy was not a violation of any state or federal law or FINRA rule or deemed to be an illegal sales contest by any regulatory authority. *See* Dkt. No. 58 at 371-379.

First Trust points to Edwards's discussion with Mr. Jackson, in which Mr. Jackson explained that First Trust's Year-End Gift Policy did not run afoul of applicable regulations. *See* Dkt. No. 58 at 29. And First Trust challenges Edwards's reasonable belief on the basis that "FINRA and the SEC have never questioned [First Trust's] Gift Policy over many years and many examinations." Dkt. No. 57 at 32.

But Edwards contends that his belief arose after he learned of First Trust's Year-End Gift Policy in May 2022 upon speaking about it with colleagues, including Chris Lagioia, First Trust's Senior Vice President for National Accounts. *See* Dkt. No. 71 at 5, 8. And Edwards states that he "specifically recall[ed] Mr. Lagioia expressing concerns that he believed First Trust's practice of giving year end gifts to the financial advisors who sold the most First Trust products constituted an illegal sales contest." *Id.* at 5; *see also* Dkt. No. 58 at 111.

While Mr. Lagioia acknowledges having multiple telephone conversations with Edwards and that Edwards expressed concerns over First Trust's Year-End Gift Policy, Mr. Lagioia denies ever describing it as an "illegal sales contest." Dkt. No. 58 at 162-164.

A reasonable jury could find that Edwards's belief was objectively reasonable considering his 20 years of training and experience and the factual circumstances surrounding his interactions with Mr. Lagioia.

Although First Trust has provided evidence and argument to refute Edwards's factual assertion regarding his belief, on summary judgment, the Court must review all evidence in the light most favorable to the non-movant. *See Rosado v. Deters,* 5 F.3d 119, 123 (5th Cir. 1993); *see also Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007) (court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment).

And, so, viewing the allegations and summary judgment evidence most favorably to Edwards, the summary judgment evidence shows a genuine dispute of material fact as to whether Edwards reasonably believed First Trust's Year-End Gift Policy violated an SEC rule or regulation.

### B. <u>First Trust's Knowledge of Edwards's Protected Activity</u>

First Trust argues that "[t]he evidence unequivocally demonstrates that not a single individual at [First Trust] knew, or had reason to know, that [Edwards] ever filed his whistleblowing complaint on May 20, 2022 or otherwise engaged in protected activity prior to his termination." Dkt. No. 57 at 35.

But Edwards sent an email to Mr. Jackson, expressing his concern regarding First Trust's Year-End Gift Policy on May 13, 2022. *See* Dkt. No. 58 at 340. And Edwards sent an email to Mr. Ritter, Ms. Costello, and Mr. Jackson the evening before his termination reflecting the same. *See* Dkt. No. 71 at 22-23.

And, so, the record suggests that a reasonable jury could find that First Trust knew about Edwards's alleged protected activity.

### C. **The Protected Activity was a Contributing Factor in the Adverse Action**

Edwards must show that his protected conduct was a "contributing factor" in First's Trust termination of his employment. *Halliburton,* 771 F.3d at 259 (citing *Allen,* 514 F.3d at 476). A "contributing factor is 'any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision.'" *Id.* at 263 (quoting *Allen,* 514 F.3d at 476 n.3; cleaned up). And Edwards is not required to show retaliatory intent. *See Murray v. UBS Sec., LLC*, 601 U.S. 23, 39 (2024).

First Trust asserts that Edwards cannot establish that his alleged whistleblowing contributed to his termination because the decision to terminate him was made "well in advance" based upon his repeated compliance violations and poor performance. Dkt. No. 57 at 33. Specifically, Mr. Ritter, who was Edwards's direct supervisor, testified that he decided to terminate Edwards on May 3, 2022 – ten days prior to Edwards's email to Mr. Jackson – and that nothing after this initial decision impacted his decision to ultimately terminate Edwards. *See* Dkt. No. 58 at 55-57. Mr. Ritter purportedly memorialized this decision in his email to Mr. Roggensack on May 5, 2022, which stated, "I would like to get rid of Aaron. He is a compliance issue." *Id.* at 156-157. And, so, First Trust takes the position that Mr. Ritter "made up his mind to terminate [Edwards] no than May 5, 2022." Dkt. No. 57 at 7.

Edwards argues that the temporal proximity between the alleged protected activity and his termination is enough, on its own, to infer causation and create a genuine fact dispute regarding the "contributing factor" element. *See* Dkt. No. 70 at

18-20.

Edwards contends that the temporal proximity is "extremely close" because First Trust terminated Edwards's employment ten days after his initial whistleblower report to Mr. Jackson and one day after his second internal whistleblower report to Mr. Ritter, Ms. Costello, and Mr. Jackson *See id.* at 20.

But, in the Title VII context, "[t]he Fifth Circuit has held that temporal proximity between the protected activity and the alleged adverse employment action, by itself, is insufficient to create a genuine issue of material fact for the element of causation." *Cephus v. Texas Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818 (S.D. Tex. 2015) (citing *Kopszywa v. Home Depot USA, Inc.*, 620 F. App'x 275, 280, (5th Cir. 2015)).

And the record demonstrates that First Trust and, specifically, Mr. Ritter had already been contemplating Edwards's termination before learning of his protected activity. *See* Dkt. No. 58 at 136-140, 156.

And, so, the Court disagrees that the temporal proximity between Edwards's alleged protected activity and his termination is, by itself, sufficient. *Accord Crampton v. Weizenbaum*, 757 F. App'x 357 (5th Cir. 2018) (agreeing with the district court that the timing of Plaintiff's termination was less suspect because their supervisors had already counseled them about unprofessional behavior before engaging in any unprotected activity and "[i]nferring causation from proximity under these circumstances would allow a whistleblower to permanently protect her job as long as she continually complains about illegal behavior").

Edwards then contends that First Trust's internal communications raise a factual dispute as to whether First Trust planned to provide Edwards with a written warning regarding his third compliance violation instead of terminating his employment until he sent his purported whistleblowing email directly to Mr. Ritter on the evening of May 22, 2022. *See* Dkt. No. 70 at 22.

Edwards points to emails between Mr. Ritter, Mr. Jackson, and Ms. Costello from May 17 to May 18, 2022, which discussed the circumstances of the violation and the language to be included in the written warning since Edwards refused to sign it as initially drafted. *See* Dkt. No. 71 at 9-20.

The written warning contains a section titled "Statement of Corrective Action," which states the following:

> In the future contact Compliance before you do anything to double check if you are unclear of the gift guidelines. At the end of Compliance calls with Erik Jackson Erik always ends his calls with "Before you do anything call Compliance."

> This is now multiple times you have violated compliance rules. I would like to set up a call with Human Resources for us to discuss your future at First Trust.

*Id.* at 21.

Edwards argues that "it would have made absolutely zero sense for [Mr.] Ritter and others at First Trust to prepare and continue working on a written warning to provide [Edwards]" if Mr. Ritter has already decided to terminate him. Dkt. No. 70 at 21. Edwards adds that this assertion is supported by the testimony of Mr. Roggensack, First Trust's President. *See id.*

When asked "[w]hy would First Trust provide an employee a warning

regarding an issue if First Trust was in fact issuing a termination notice at the same time," Mr. Roggensack responded "I don't know." Dkt. No. 71 at 117. And he testified that he could not think of a reason why it would make sense to provide an employee a warning with corrective action if First Trust had already decided to terminate the employee. *See id.*

First Trust contends that Edwards mischaracterizes the warning and its purpose. *See* Dkt. No. 72 at 10-12. According to First Trust, the warning "served dual purposes to formally document the compliance violation and to meet [First Trust's] record-keeping obligations, specifically those of wholesalers like [Edwards], as required by SEC and FINRA rules. *Id.* at 12. The third warning contained language requiring a conversation with human resources that did not appear in prior warnings, *see* Dkt. No. 58 at 127-131, and Mr. Ritter testified that the purpose of a warning was not necessarily to "warn them from doing something again," Dkt. No. 73 at 12.

Considering the allegations and summary judgment evidence most favorably to Edwards, the Court finds that a genuine dispute of fact exists as to whether First Trust planned to provide Edwards with a third written warning, instead of terminating his employment, until he engaged in his alleged whistleblowing activity.

Given this factual dispute and the temporal proximity described above, a reasonable jury could find that Edwards was terminated, in part, because of his protected activity.

        i. <u>Termination for Reasons Unrelated to Edwards's Protected Activity</u>

First Trust contends that, even if Edwards established a prima facie retaliation

claim, there is clear and convincing evidence that he would have been terminated for reasons unrelated to his alleged protected activity.

If an employee establishes a prima facie SOX whistleblower claim, "the employer may avoid liability if it can prove 'by clear and convincing evidence' that it 'would have taken the same unfavorable personnel action in the absence of that [protected] behavior.'" *Allen*, 514 F.3d at 476 (quoting 49 U.S.C. § 42121(b)(2)(B)(iv)).

"The 'clear and convincing' evidence standard is even more stringent that those employers face in other employment discrimination cases." *Sequeira v. KB Home*, 716 F. Supp. 2d 539, 555 (S.D. Tex. 2009).

To meet its burden, First Trust points to reasons similar to those it offers in contending that Edwards's purported whistleblowing activity was not a "contributing factor" to his termination, including that it was based on repeated compliance violations and poor performance. *See* Dkt. No. 72 at 7-9.

First Trust points to the email that Ms. Costello sent to Mr. Ritter on the morning of May 22, 2022, *see* Dkt. No. 58 at 367, which purportedly made evident that Edwards's termination had already been decided and was made due to his poor performance, declining sales numbers, and compliance violations and which made "no discussion whatsoever" of Edwards's purported whistleblower activity, Dkt. No. 72 at 8.

But, as discussed above, a genuine dispute of fact exists as to whether First Trust planned to provide Edwards with a third written warning, instead of terminating his employment, until he engaged in his alleged whistleblowing activity.

Given this factual dispute regarding the timing of the final decision to terminate Edwards's employment, a reasonable jury could find that Edwards would not have been terminated had it not been for his protected activity.

And, so, the Court cannot conclude, as a matter of law, that Edwards's termination would have occurred in the absence of his protected activity.

## II.    **Edwards's Dodd-Frank Act Claim**

Edwards asserts a claim against First Trust for violation of the anti-retaliation, whistleblower protection, and employee protection provisions provided under Dodd-Frank, 15 U.S.C. § 78u-6.

"Dodd–Frank establish[d] a corporate whistleblowing reward program, accompanied by a new provision prohibiting any employer from retaliating against 'a whistleblower' for providing information to the SEC, participating in an SEC proceeding, or making disclosures required or protected under Sarbanes–Oxley and certain other securities laws." *Lawson v. FMR LLC*, 571 U.S. 429, 456 (2014) (citing 15 U.S.C. § 78u-6(a)(6), (b)(1), (h)).

The term "whistleblower" is defined as "any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission." 15 U.S.C. § 78u-6(a)(6).

This definition "expressly and unambiguously requires that an individual provide information to the SEC to qualify as a 'whistleblower' for purposes of § 78u-6." *Asadi v. G.E. Energy (U.S.A.), L.L.C.,* 720 F.3d 620, 623 (5th Cir. 2013). And "[t]he

Dodd-Frank whistleblower protections only extend 'to those individuals who provide information relating to a violation of the securities laws to the SEC." *Buchanan v. Sterling Constr. Co., Inc.*, No. CV H-16-3429, 2017 WL 6888308, at *2 (S.D. Tex. July 26, 2017) (quoting *Asadi*, 720 F.3d at 630).

No Texas district court has yet to articulate the elements required to establish a prima facie case under Dodd-Frank specifically. And, so, "following the case law cited in the Federal Rules implementing Dodd-Frank, the Court adopts the 'well-established framework' for deciding retaliation case in a variety of other contexts." *Hall v. Teva Pharm. USA, Inc.*, 214 F. Supp. 3d 1281 (S.D. Fla. 2016) (citing *SEC Securities Whistleblower Incentives and Protections*, 76 Fed. Reg. 34300, 34304 n. 41 (June 13, 2011)).

A retaliation claim under Dodd-Frank requires a plaintiff to show that "(1) he engaged in protected activity; (2) he suffered a materially adverse employment action; and (3) there was a causal connection between the adverse employment action and the protected activity." *Slawin v. Bank of Am. Merch. Servs.*, 491 F. Supp. 3d 1334 (N.D. Ga. 2020) (citing *Grimm v. Best Buy Co.*, No. 16-cv-1258 (DWF/HB), 2017 WL 9274874 (D. Minn. Apr. 19, 2017)); *see also Ott v. Fred Alger Mgmt., Inc.*, No. 11 CIV. 4418 LAP, 2012 WL 4767200 (S.D.N.Y. Sept. 27, 2012).

The Court's analysis turns on the first and third elements.

### A.    <u>Protected Activity</u>

The first prong of a Dodd-Frank claim requires that an individual "possess a reasonable belief that the information [he or she is] providing [to the SEC] relates to

a possible securities law violation." 17 C.F.R. § 240.21F–2(b)(i).

And the "reasonable belief standard requires that the employee hold a subjectively genuine belief that the information demonstrates a possible violation, and that this belief is one that a similarly situated employee might reasonably possess." *Ott*, 2012 WL 4767200, at *4 (citing Implementation of the Whistleblower Provisions of Section 21F of the Securities Exchange Act of 1934, Exchange Act Release No. 34–64545 (May 25, 2011), at 7).

First Trust contends that Edwards has not demonstrated that he engaged in a protected activity for the same reasons that it argues that he has not done so for purposes of his SOX claim.

But, as discussed above, the summary judgment evidence shows a genuine dispute of material fact as to whether Edwards reasonably believed First Trust's Year End Gift Policy constituted an illegal sales contest in violation of an SEC rule or regulation.

## B. Causal Connection

First Trust contends that "there is no basis by which [Edwards] can factually establish a causal connection between his whistleblowing activity and termination" because "there is no evidence that [Edwards] notified anyone after he filed a complaint with the SEC and FINRA, let alone a supervisor, before he was terminated." Dkt. No. 57 at 37.

First Trust bases this argument on its assertion that Edwards does not qualify as a "whistleblower" under the third category of protected activity for whistleblowers

under Dodd-Frank. *See* Dkt. No. 72 at 18-19.

Under the third category, "a whistleblower is protected from retaliation for []
'making disclosures that are required or protected under' Sarbanes–Oxley, the
Securities Exchange Act of 1934, the criminal anti-retaliation proscription at 18
U.S.C. § 1513(e), or any other law subject to the SEC's jurisdiction." *Digital Realty
Tr., Inc. v. Somers*, 583 U.S. 149, 153 (2018) (quoting 15 U.S.C. § 78u–6(h)(1)(A)(iii)).

First Trust argues that the third category is inapplicable to Edwards because
he did not disclose his May 20, 2022 SEC submission to Mr. Ritter prior to his
termination. *See* Dkt. No. 72 at 19. And the first time that any individual at First
Trust learned of Edwards's whistleblowing to the SEC was after his termination on
receipt of a letter from his counsel at the time, dated June 7, 2022. *See* Dkt. No. 58 at
30.

The Court disagrees with First Trust's understanding of the whistleblower
protections offered to employees under Dodd-Frank.

Edwards is a "whistleblower" for purposes of Dodd-Frank because he reported
information relating to a violation of the securities laws to the SEC. *See* Dkt. No. 58
at 356-366; *see also Asadi*, 720 F.3d at 630.

And, as to whether the third category of protected activity applies to Edwards,
the Court in *Digital Realty* explained that,

> [w]ith the statutory definition [of "whistleblower"] incorporated, clause
> (iii) protects a whistleblower who reports misconduct *both* to the SEC
> and to another entity, but suffers retaliation because of the latter, non-
> SEC, disclosure. That would be so, for example, where the retaliating
> employer is unaware that the employee has alerted the SEC. In such a
> case, without clause (iii), retaliation for internal reporting would not be

reached by Dodd–Frank, for clause (i) applies only where the employer retaliates against the employee "because of" the SEC reporting. § 78u–6(h)(1)(A). Moreover, even where the employer knows of the SEC reporting, the third clause may operate to dispel a proof problem: The employee can recover under the statute without having to demonstrate whether the retaliation was motivated by the internal report (thus yielding protection under clause (iii)) or by the SEC disclosure (thus gaining protection under clause (i)).

*Digital Realty*, 583 U.S. at 165.

And, so, the whistleblower protections of Dodd-Frank under the third category are applicable to Edwards for the protected activity alleged under his SOX claim – his internal reports to Mr. Jackson on May 13, 2022, *see* Dkt. No. 58 at 340, and to Mr. Ritter, Ms. Costello, and Mr. Jackson on the evening before his termination, *see* Dkt. No. 71 at 22-23. *Accord Digital Realty*, 583 U.S. at 156 ("[T]he clause shields an employee's reports of wrongdoing to an internal supervisor if the reports are independently safeguarded from retaliation under [SOX].").

As with Edwards's SOX claim, a genuine dispute of fact exists as to whether there was a causal connection between Edwards's protected activity and his termination.

And, so, First Trust is not entitled to summary judgment on Edwards's Dodd-Frank claim.

## III.    **Edwards's CFPA Claim**

Edwards asserts a claim against First Trust for violation of the anti-retaliation and whistleblower protection, and employee protection provisions provided under the CFPA, 12 U.S.C. § 5567.

First Trust contends that Edwards has abandoned his CFPA claim because he

failed to respond to First Trust's summary judgment argument against the respective claim. *See* Dkt. No. 72 at 6.

When a non-moving party files a response to a motion for summary judgment and fails to include an argument about a claim, defense, or theory that the motion seeks to have the Court dismiss with prejudice, the Court may determine that the nonmoving party has abandoned the unaddressed claim, defense, or theory. *See Harris v. City of Schertz*, 27 F.4th 1120, 1123 (5th Cir. 2022); *Vela v. City of Houston*, 276 F.3d 659, 678-79 (5th Cir. 2001); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1163-64 (5th Cir. 1983); *accord Maynard v. PayPal, Inc.*, No. 3:18-cv-259-D, 2019 WL 3552432, at *3 (N.D. Tex. Aug. 5, 2019) ("A party may abandon its claim when it fails to pursue the claim beyond the complaint. *See, e.g., Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Vela v. City of Houston*, 276 F.3d 659, 678-79 (5th Cir. 2001); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1163-64 (5th Cir. 1983).").

In its summary judgment motion, First Trust argues that Edwards's CFPA claim fails as a matter of law because he lacks standing. *See* Dkt. No. 57 at 33-34.

Edwards's response fails to address the CFPA claim altogether. *See* Dkt. No. 70.

And, so, the Court concludes that Edwards abandoned his CFPA claim and dismisses it with prejudice.

## Conclusion

The Court GRANTS in part and DENIES in part First Trust's Motion for

Summary Judgment [Dkt. No. 56] and dismisses with prejudice Edwards's claim asserted under the CFPA, 12 U.S.C. § 5567.

     SO ORDERED.

     DATED: January 21, 2025

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE