IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AARON EDWARDS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-2239-BN |
| | § | |
| FIRST TRUST PORTFOLIOS L.P., | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Aaron Edwards filed this lawsuit against his former employer, Defendant First Trust Portfolios L.P. ("First Trust"), alleging that he was terminated in retaliation for engaging in purported whistleblowing activities.

The Court has previously summarized the background of this case. *See* Dkt No. 74. And the Court's Final Pretrial Order sets out the parties' claims and defenses and, under Federal Rule of Civil Procedure 16(d), "controls the course of the action unless the court modifies it." *See* Dkt. No. 108.

Edwards's claims include: (1) violation of the anti-retaliation and whistleblower protection provisions provided under the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. § 1514A, and (2) violation of the anti-retaliation, whistleblower protection, and employee protection provisions provided under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), 15 U.S.C. § 78u-6.

Before trial, the Court, in a February 20, 2025 Memorandum Opinion and Order, granted Defendant First Trust's Motion to Strike Plaintiff's Jury Demand as

to Edwards's Dodd-Frank claim. *See* Dkt. No. 103.

And, so, the Court empaneled a binding jury for Edwards's SOX claim, and the same jury served as an advisory jury for Edwards's Dodd-Frank claim. *See* FED. R. CIV. P. 39(c)(1) (providing that, "[i]n an action not triable of right by a jury, the court, on motion or on its own: (1) may try any issue with an advisory jury").

On February 24 to March 3, 2025, this action was tried before a jury.

Following the testimony of twelve witnesses appearing in person or through deposition and the admission of 79 exhibits, the jury returned a verdict in favor of First Trust on Edwards's SOX claim and an advisory verdict in favor of First Trust on Edwards's Dodd-Frank claim. *See* Dkt. No. 129

Edwards has filed a Motion for New Trial on his SOX claim under Federal Rule of Civil Procedure 59. *See* Dkt. No. 139. First Trust filed a response, *see* Dkt. No. 141, and Edwards filed a reply, *see* Dkt. No. 142.

For the reasons that follow,[1] the Court finds for Defendant First Trust on Edwards's Dodd-Frank claim. And the Court denies Edwards's Motion for New Trial

---

[1] The Court sets out in this memorandum opinion its findings of fact and conclusions of law. *See* Fed. R. Civ. P. 52(a)(1). All findings of fact are based on a preponderance of the evidence standard. Although the Court has carefully considered the trial testimony and exhibits, the Court has written this memorandum opinion to comply with the level of detail required in this circuit for findings of fact and conclusions of law. *See, e.g.*, *Century Marine Inc. v. United States*, 153 F.3d 225, 231 (5th Cir. 1998) (discussing standards). The Court has not set out its findings and conclusions in punctilious detail, slavishly traced the claims issue-by-issue and witness-by-witness, or indulged in exegetics, parsing or declaiming every fact and each nuance and hypothesis. It has instead written a memorandum opinion that contains findings and conclusions that provide a clear understanding of the basis for the court's decision. *See id.*

on his SOX claim [Dkt No. 139].

<b>Legal Standards and Analysis</b>

### I.    Edwards's Dodd-Frank Act Claim

The Court has previously summarized the legal standards concerning Dodd-Frank but repeats them here for reference. *See* Dkt. No. 74.

"Dodd-Frank establishe[d] a corporate whistleblowing reward program, accompanied by a new provision prohibiting any employer from retaliating against 'a whistleblower' for providing information to the [Securities and Exchange Commission ("SEC")], participating in an SEC proceeding, or making disclosures required or protected under Sarbanes-Oxley and certain other securities laws." *Lawson v. FMR LLC*, 571 U.S. 429, 456 (2014) (citing 15 U.S.C. § 78u-6(a)(6), (b)(1), (h)).

The term "whistleblower" is defined as "any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission." 15 U.S.C. § 78u-6(a)(6).

This definition "expressly and unambiguously requires that an individual provide information to the SEC to qualify as a 'whistleblower' for purposes of § 78u-6." *Asadi v. G.E. Energy (U.S.A.), L.L.C.,* 720 F.3d 620, 623 (5th Cir. 2013). And "[t]he Dodd-Frank whistleblower protections only extend 'to those individuals who provide information relating to a violation of the securities laws to the SEC." *Buchanan v. Sterling Constr. Co., Inc.*, No. CV H-16-3429, 2017 WL 6888308, at *2 (S.D. Tex. July 26, 2017) (quoting *Asadi*, 720 F.3d at 630).

No Texas district court has yet to articulate the elements required to establish a prima facie case under Dodd-Frank specifically. And, so, "following the case law cited in the Federal Rules implementing Dodd-Frank, the Court adopts the 'well-established framework' for deciding retaliation case in a variety of other contexts." *Hall v. Teva Pharm. USA, Inc.*, 214 F. Supp. 3d 1281 (S.D. Fla. 2016) (citing *SEC Securities Whistleblower Incentives and Protections*, 76 Fed. Reg. 34300, 34304 n. 41 (June 13, 2011)).

A retaliation claim under Dodd-Frank requires a plaintiff to show that "(1) he engaged in protected activity; (2) he suffered a materially adverse employment action; and (3) there was a causal connection between the adverse employment action and the protected activity." *Slawin v. Bank of Am. Merch. Servs.*, 491 F. Supp. 3d 1334 (N.D. Ga. 2020) (citing *Grimm v. Best Buy Co.*, No. 16-cv-1258 (DWF/HB), 2017 WL 9274874 (D. Minn. Apr. 19, 2017)); *see also Ott v. Fred Alger Mgmt., Inc.*, No. 11 CIV. 4418 LAP, 2012 WL 4767200 (S.D.N.Y. Sept. 27, 2012).

## A. **Whistleblower Requirement**

As a threshold matter, the Court must determine whether Edwards qualifies as a "whistleblower" under Dodd-Frank.

As the Court explained in its Jury Charge, a "whistleblower" is "any individual who provides information relating to a violation of the securities laws to the [SEC]." Dkt. No. 127 at 14; *see also Asadi*, 720 F.3d at 630.

The evidence presented at trial shows that, on May 20, 2022, Edwards reported his concerns regarding First Trust's Year-End Gift Policy to the SEC via an online

submission form. *See* Defendant's Exhibit ("DX") 29. And, in that form, Edwards asserted that First Trust's Year-End Gift Policy constituted an illegal sales contest under SEC and Financial Industry Regulatory Authority ("FINRA") regulations. *See id.*

The Special Verdict Form posed the question, "Has Edwards proven by a preponderance of the evidence that he provided information relating to a violation of the securities laws to the [SEC]?" Dkt. No. 129 at 3. The jury, in its advisory role, answered, "Yes." *Id.*

Based on the evidence in the record, the Court agrees that Edwards was a "whistleblower" for Dodd-Frank purposes because he reported information relating to an alleged violation of the securities laws to the SEC.

And, so, Edwards has satisfied this threshold requirement.

**B.  Adverse Employment Action**

The parties stipulated that First Trust terminated Edwards's employment on May 23, 2022. *See* Dkt. No. 108 at 31. And, so, Edwards satisfies this element.

**C.  Protected Activity**

Whether Edwards prevails on his Dodd-Frank claim turns on whether he engaged in a protected activity and, if so, whether there was a causal connection between the adverse employment action and the protected activity.

As the Court explained in its Jury Charge, Edwards must prove by a preponderance of the evidence that he engaged in a "protected activity." Dkt. No. 127 at 14.

An employee engaged in a protected activity if he:

    i.    Provided information to the SEC relating to a violation of the U.S. securities laws;

    ii.    Initiated, testified in, or assisted in any investigation or judicial or administrative section of the SEC based upon or related to such information; or

    iii.    Made disclosures that are required or protected under SOX.

*Id* at 14-15.

And a Dodd-Frank claim requires that an individual "possess a reasonable belief that the information [he or she is] providing [to the SEC] relates to a possible securities law violation." 17 C.F.R. § 240.21F-2(b)(i).

To show that he had a reasonable belief, Edwards must first show that he "subjectively believed" – that is, personally and in good faith – that the conduct he disclosed constituted a possible securities law violation. Dkt. No. 127 at 15; *see also Ott*, 2012 WL 4767200, at *4 (citing Implementation of the Whistleblower Provisions of Section 21F of the Securities Exchange Act of 1934, Exchange Act Release No. 34-64545 (May 25, 2011), at 7).

Edwards must also show that he "objectively believed" that the conduct that he disclosed constituted a violation of an SEC rule or regulation. Dkt. No. 127 at 15. Whether Edwards's belief was objectively reasonable is determined by "whether a reasonable person in the same circumstances with the same knowledge, experience, and training as Edwards would have believed that the conduct constituted a possible securities law violation." *Id.*; *see also Ott*, 2012 WL 4767200, at *4 (citing Implementation of the Whistleblower Provisions of Section 21F of the Securities Exchange Act of 1934, Exchange Act Release No. 34-64545 (May 25, 2011), at 7).

On May 3, 2022, Edwards had been issued a compliance violation (his third in an eight-month period) implicating First Trust's Year-End Gift Policy, *see* Plaintiff's Exhibit ("PX") 16, which stated that "[t]he First Trust Gift Rule on [financial] advisor[s] is $100 per year, however it is the firm's policy to not give gifts because the First Trust year-end gift is usually right below the $100 threshold," DX 4.

At trial, Edwards testified that, in his online form submitted to the SEC on May 20, 2022, *see* DX 29, he wrote that he had reported his concerns that First Trust's Year-End Gift Policy constituted an illegal sales contest under SEC and FINRA rules to First Trust's head of compliance, Erik Jackson, on May 13, 2022, *see* Dkt. No. 132 at 146-147. And, when asked if he believed this to be true, Edwards responded, "You would never contact the SEC or FINRA if you didn't believe it to be true." *Id.* at 147.

But Mr. Jackson testified that he had participated in a telephone call on May 19, 2022 to discuss Edwards's email, in which call Mr. Jackson explained to Mr. Edwards that First Trust's Year-End Gift Policy did not run afoul of applicable regulations. *See* Dkt No. 133 at 146-47.

Steve Ritter, Edwards's direct supervisor, testified that Edwards had previously participated in First Trust's year-end gift giving process and had never raised issues about it before May 2022. *See* Dkt. No. 131 at 169-70, 188-89, & 202; Dkt. No. 132 at 222.

And Jeff Teare, Edwards's co-worker and internal wholesaler at First Trust, testified that Edwards told him, before his termination, that he might have to use his belief – that First Trust's Year- End Gift Policy constituted an illegal sales contest –

as "leverage" to keep his job at First Trust. *See* Dkt. No. 133 at 273-74.

Considering this testimony and the evidence in the record, the Court does not find credible Edwards's testimony regarding his subjective belief that First Trust's Year-End Gift Policy violated SEC rules or regulations.

And, so, the, Court finds that Edwards did not possess a subjective belief.

As to Edwards's objective belief, the Court was presented with no testimony that a reasonable person in the same circumstances with the same knowledge, experience, and training as Edwards would have believed that First Trust's Year-End Gift Policy potentially violated an SEC rule or regulation.

Instead, Edwards's co-workers – Morgan Palmer and Sterling Witt – testified that neither of them believed that First Trust's Year-End Gift Policy ran afoul of applicable regulations. *See* Dkt. No. 133 at 222-24 (testimony of Mr. Palmer); Dkt. No. 134 at 114-15 (testimony of Mr. Witt). Mr. Ritter and Mr. Jackson testified to the same. *See* Dkt. No 131 at 189 (testimony of Mr. Ritter); Dkt. No. 133 at 149 (testimony of Mr. Jackson).

And, so, the Court finds that Edwards also did not have an objective belief that First Trust's Year-End Gift Policy constituted a possible violation of SEC rules or regulations.

The Special Verdict Form posed the question, "Has Edwards proven by a preponderance of the evidence that he engaged in a protected activity under Dodd-Frank?" Dkt. No. 129 at 3. The jury, in its advisory role, answered, "No." *Id.*

The Court agrees because, as discussed above, Edwards lacked both a

subjective and objective belief that First Trust's Year-End Gift Policy constituted a possible violation of SEC rules of regulations.

And, so, the Court finds that Edwards did not engage in a protected activity.

**D. Causal Connection**

Because the Court finds that Edwards did not engage in a protected activity, Edwards's Dodd-Frank claim fails. But, insofar as he did, his claim still falls short for the reasons discussed below.

As the Court explained in its Jury Charge, Edwards must prove that there was a "causal connection" between his protected activity and First Trust's decision to terminate his employment. *See* Dkt. No. 127 at 15.

To do so, Edwards must show that he was terminated "because of" his protected activity, which means he would not have been terminated but for the protected activity. *See id.* at 14-15.

And, as to this element, the jury was instructed that the third category of protected activity under Dodd-Frank (as listed above) protects a whistleblower who reports conduct both to the SEC and to an internal supervisor but suffers retaliation because of the latter, non-SEC disclosure (for example, where the retaliating employer is unaware that the employee has alerted the SEC). *See id.* at 15; *see also Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 165 (2018).

The evidence in the record shows that Mr. Ritter ultimately made the decision to terminate Edwards. Dkt. No. 130 at 193. And, on May 23, 2022, Mr. Ritter informed Edwards that he was being formally terminated via a telephonic meeting.

Dkt. No. 131 at 53-54.

But, at the time of termination, neither Mr. Ritter nor anyone else on the termination call, was aware that Edwards had filed his online submissions forms with the SEC or FINRA on the evening of May 20, 2022. *See* Dkt. No. 131 at 198-99; Dkt. No. 132 at 261; Dkt. No. 133 at 152, 260.

And, so, the Court cannot find that there was a causal connection between this activity and his termination. *Accord Hall*, 214 F. Supp. 3d at 1290 ("To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated;" cleaned up).

The Court turns to Dodd-Frank's whistleblower protections under the third category, which it found at summary judgment were applicable to Edwards for the alleged protected activity under his SOX claim – specifically, his internal reports to Mr. Jackson on May 13, 2022, *see* DX 22, and to Mr. Ritter, Ms. Costello, and Mr. Jackson on the evening of May 22, 2022, *see* PX 9.

But the evidence in the record suggests that Mr. Ritter decided to terminate Edwards before any of his internal reports – that is, before Edwards sent his May 13, 2022 email to Mr. Jackson.

In October and November 2021, First Trust cited Edwards for compliance violations. *See* DX 7 & 11. Edwards executed written warnings acknowledging these violations and a statement of corrective action. *See id.*

On March 8, 2022, Mr. Ritter sent an email to Edwards summarizing a

discussion they had regarding work performance issues. *See* DX 12. The email stated:

> If your percent of firm and rank continue to decline I am going to go a
> different route with someone else. I don't want to do this but you have
> to deliver. Take this very seriously. Also during our discussion we went
> over Compliance very thoroughly and since you have had several
> compliance issues if anything else arises you will be let go. I don't want
> you to leave but we can't have people continue to make mistakes and
> put the firm at risk.

*Id.*

On May 3, 2022, First Trust cited Edwards for a third compliance violation,
which involved purchasing a $62 gift for one of his financial advisor clients to
commemorate their child's athletics accomplishment. *See* DX 16.

On May 5, 2022, Mr. Ritter sent an email to Mr. Roggensack stating that
Edwards was a "compliance issue" and that he would "like to get rid of [him]." DX 18.

Mr. Ritter testified that, on May 10, 2022, he spoke with Edwards via
telephone and told him that he would be terminated if he did not resign because of
"multiple compliance violations" and "poor results." Dkt. No. 131 at 182, 208.

Mr. Ritter also testified that he had never seen Edwards's May 13, 2022 email
to Mr. Jackson before the formal termination call on May 23, 2022. *See* Dkt. No. 131
at 188, 203, 206.

And Edwards fails to show any causal link between his May 22, 2022 email,
which was sent at 10: 34 p.m. Central Time (CT) on a Sunday night, and his formal
termination the next morning. In fact, Mr. Ritter testified that he did not discuss
Edwards's email with anyone before informing him that he was being terminated on
May 23, 2022. *See* Dkt No. 130 at 214.

Based on the evidence in the record and Mr. Ritter's testimony, which the Court finds credible, Edwards's internal reports (his May 13, 2022 email to Mr. Jackson and his May 22, 2022 email to Mr. Ritter, Ms. Costello, and Mr. Jackson) played no role in First Trust's decision to terminate his employment.

And, so, insofar as Edwards engaged in a protected activity, the Court finds that there was no causal connection between the protected activity and First Trust's termination decision.

## II.    **Motion for New Trial on Edwards's SOX Claim**

Federal Rule of Civil Procedure 59 allows a district court to order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).

Rule 59 "confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-13 (5th Cir. 1985).

And, so, a new trial may be granted if the Court concludes that the verdict is against the weight of the evidence, that the trial was unfair, or that prejudicial error was committed in the course of the trial. *See id.* at 613.

"For the verdict to be against the great weight of the evidence, the movant must show 'an absolute absence of evidence to support the jury's verdict.'" *Dragoo v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:16-cv-984-O, 2019 WL 13075591 (N.D. Tex. Feb. 21, 2019) (quoting *Seibert v. Jackson Cty.*, 851 F.3d 430, 439 (5th Cir. 2017)).

Edwards contends that a new trial is warranted because the jury's verdict was

against the great weight of the evidence.

### A. __The Jury's Verdict__

The disposition of the case turned on the jury's answer (in the Special Verdict Form) to the question, "Has Edwards proven by a preponderance of the evidence that he engaged in protected whistleblower activity [under SOX] before First Trust terminated his employment?" *See* Dkt. No. 129. The jury answered "No." *Id.*

Edwards argues that the great weight of the evidence does not support the jury's verdict. Specifically, Edwards contends that the weight of the evidence shows that Edwards possessed both a subjective and objectively reasonable belief that First Trust's Year-End Gift Policy constituted a possible violation of SEC rules or regulations. *See* Dkt. No. 139 at 6-7.

Regarding this element of Edwards's SOX claim, the Court charged the jury as follows:

Protected Whistleblowing Activity

The first element that Edwards must prove by a preponderance of the evidence is that he engaged in "protected whistleblowing activity."

An employee engages in protected whistleblowing activity if he provided information to a supervisor regarding conduct that the employee reasonably believed constituted mail fraud, wire fraud, bank fraud, securities fraud, violation of a Securities and Exchange Commission ("SEC") rule or regulation, or violation of a federal law relating to fraud against shareholders.

To show that he had a reasonable belief, Edwards must first show that he subjectively believed – that is, personally and in good faith – that the conduct that he disclosed constituted a violation of an SEC rule or regulation.

To show that he had a reasonable belief, Edwards must also show

that he objectively believed that the conduct that he disclosed constituted a violation of an SEC rule or regulation. Whether Edwards's belief was objectively reasonable is determined by whether a reasonable person in the same circumstances with the same knowledge, experience, and training as Edwards would have believed that the conduct constituted a violation of an SEC rule or regulation.

Edwards is not required to show that any law or regulation was actually violated. So long as Edwards reasonably believed that First Trust was violating an SEC rule or regulation, he satisfies his burden, even if it later turned out that he was mistaken.

To prove that he engaged in protected activity, Edwards must show, by a preponderance of the evidence, that he complained to a person with supervisory authority over him who had the authority to investigate the alleged misconduct.

Dkt. No. 127 at 11.

## B. The Jury's Verdict Was Not Against the Great Weight of the Evidence

The Court rejects Edwards's argument for the same reasons that it finds that Edwards lacked both a subjective and objectively reasonable belief that First Trust's Year-End Gift Policy constituted a possible violation of SEC rules of regulations as it relates to his Dodd-Frank claim, as discussed above.

And the jury's finding – like the Court's – is supported by the evidence in the record. *See* Dkt. No. 131 at 169-70, 188-89, 202 (testimony of Mr. Ritter); Dkt. No. 132 at 222 (testimony of Mr. Ritter); Dkt No. 133 at 146-47 (testimony of Mr. Jackson); *id.* at 273-74 (testimony of Mr. Teare); *id.* at 222-24 (testimony of Mr. Palmer); Dkt. No. 134 at 114-15 (testimony of Mr. Witt).

And, so, the Court declines to "invade the fact-finding province of the jury" and denies Edwards's motion for a new trial on this basis. *Accord* Jones v. City of San

Antonio, No. 14-CV-328 (RCL), 2017 WL 3741559, at *3 (W.D. Tex. Aug. 30, 2017), *aff'd*, 757 F. App'x 410 (5th Cir. 2019) (finding that the jury "weighed the evidence, assessed the credibility of the witnesses, and believed the defendants over the plaintiffs," and, so, had "ample support" for a verdict in defendants' favor).

**Conclusion**

For the reasons explained above, the Court finds for Defendant First Trust on Edwards's Dodd-Frank claim. And the Court denies Edwards's Motion for New Trial on his SOX claim [Dkt No. 139].

A separate judgment will be entered.

SO ORDERED.

DATED: June 12, 2025

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE